**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

MICHAEL IRGANG,            )
          Plaintiff,        )
                        )
        v.               )     CAUSE NO.: 2:07-CV-437-PRC
                        )
TOWN OF GRIFFITH, INDIANA, et al.,  )
          Defendants.     )

**OPINION AND ORDER**

This matter is before the Court on (1) "Defendants, Town of Griffith's, Sgt. Rentas', Karl Grimmer's, and Griffith Police Department's Motion for Summary Judgment" [DE 47], filed by Defendants Town of Griffith, Sergeant Rentas, Chief of Police Karl Grimmer, and the Griffith Police Department (collectively the "Griffith Defendants") on December 19, 2008, and (2) "Defendants, Town of Griffith's, Karl Grimmer's, and Griffith Police Department's Second Motion for Summary Judgment" [DE 58], filed by Defendants Town of Griffith, Karl Grimmer, and the Griffith Police Department (collectively the "Town Defendants") on March 27, 2009. For the reasons set forth in this Order, the Court grants summary judgment in favor of Defendants Town of Griffith, Sergeant Rentas, Chief of Police Karl Grimmer, and the Griffith Police Department and against Plaintiff Michael Irgang.

**PROCEDURAL BACKGROUND**

Mr. Irgang filed his Complaint on December 20, 2007, and filed an Amended Complaint on January 18, 2008, alleging violations of the Fourth and Fourteenth Amendment to the United States Constitution as well as of Indiana law. Mr. Irgang alleges that Sergeant Rentas arrested him for indecent exposure on January 26, 2006, without an arrest warrant, without probable cause, and without statutory authority to do so. He further alleges that the Town of Griffith, the Griffith Police

Department, and the Chief of Police are responsible for the challenged actions of Sergeant Rentas, alleging that Sergeant Rentas was acting in accordance with City and/or Police Department policy.

The Griffith Defendants filed an Answer to the Amended Complaint on January 23, 2008. On December 19, 2008, the Griffith Defendants filed the instant Motion for Summary Judgment and memorandum in support. Mr. Irgang filed a Response on March 13, 2009, and the Griffith Defendants filed a Reply on March 19, 2009. Shortly thereafter, three of the Griffith Defendants–the Town of Griffith, the Griffith Police Department, and Karl Grimmer–filed a Second Motion for Summary Judgment on March 27, 2009. Mr. Irgang did not file a response to the Second Motion for Summary Judgment, and the time to do so has passed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no

reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine

issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

### MATERIAL FACTS

At approximately 10:25 p.m. on January 12, 2006, the Town of Griffith Police Department received a complaint from Andrea Kalbrunner-Hoch concerning an alleged indecent exposure. Sergeant Rentas and Officer Bailey investigated the incident. Upon arriving at the apartment complex, the officers spoke with Ms. Kalbrunner-Hoch and then knocked on the door to Mr. Irgang's apartment, identifying themselves as police officers. Mr. Irgang responded, "Just a minute. I have to put on some pants." Def. Br., Exh. 2, p. 16 (Irgang Dep.). Mr. Irgang left his apartment and went out in the hallway of the apartment building to discuss the matter with the officers. The officers told Mr. Irgang that Ms. Kalbrunner-Hoch claimed that Mr. Irgang had exposed himself to her. Mr. Irgang denied the allegation and told the officers that he had seen her stooped down outside of his apartment, laughing at him through the window, and that there had been multiple police

reports regarding complaints between him and Ms. Kalbrunner-Hoch a few months earlier. Officer Rentas then arrested Mr. Irgang while he was in the hallway of the apartment building. In his deposition, Sergeant Rentas described Mr. Irgang's apartment as "submerged or partially submerged" as he observed it from outside the apartment building. He further testified that he could see Mr. Irgang's living room and a computer in the living room through the window as he approached the front door to the apartment building.

Subsequently, Sergeant Rentas and Officer Bailey executed an incident report, which provided:

Officers were dispatched to 1203 E. 35th Ave in reference to a male subject that had allegedly exposed himself to the female complainant.

Officers arrived and met with the complainant/victim, Andrea Kalbrunner-Hoch in apartment 2E. She stated she had returned home minutes earlier at which time she had an encounter with the suspect, Michael R. Irgang, who lives in apartment 0E. Ms Kalbrunner-Hoch stated after exiting a vehicle in the parking lot she began to walk toward the front steps of the apartment building.

The suspect's living room window is located to the left side of the entryway at ground level. Ms Kalbrunner-Hoch stated when she reached the front steps, the suspect pulled back his blinds, pulled down his underwear to just above his knees, exposing his genitals. He then grabbed his genitals with his left hand, and stated through the open window, "SUCK MY DICK, BITCH", while pointing to his genitals with his right index finger. Ms Kalbrunner-Hoch stated the suspect wore no other clothing at the time of this incident.

Officers responded to Mr. Irgang apartment; #0E. Upon knocking, a male occupant, later identified as Michael Irgang, made an inquiry as to who was at his door. He was advised it was the Griffith Police. Mr Irgang stated he would need a minute "to put some pants on." Moments later Mr Irgang opened the door and stepped out into the hallway. He was advised of the reason for [sic] officers presence. He steadfastly denied exposing himself to the victim. He did say, however, that he was in his own apartment and questioned how he could possibly be guilty of indecent exposure. Mr. Irgang seemed nervous from the first moment he spoke with officers.

Ms Kalbrunner-Hoch appeared upset and embarrassed by this incident. She was reluctant to repeat what the suspect had said. I believe her to be truthful and credible as she spoke of facts within her own personal knowledge.

Michael R. Irgang was arrested for Indecent Exposure. He was transported to the Griffith Police Department, processed, and transferred to the Lake County Jail.

Note:   Upon arrival officers observed Mr. Irgang's livingroom window open. It should be noted that the temperature at the time of this incident was unseasonably warm (approximately 50 degrees).

Pl. Resp., Exh. S.

On January 12, 2006, Sergeant Rentas of the Griffith Police Department executed a probable cause affidavit, and Mr. Irgang was charged with indecent exposure pursuant to Indiana Code 35-45-4-1(c)(3), a Class C misdemeanor.  The probable cause affidavit was subsequently reviewed by the judge/magistrate of the Lake Superior Court, Room 8, and sufficient probable cause was found to exist.  Eventually, Mr. Irgang's case went through pretrial diversion with a six-month deferral of charges, which were dismissed on August 9, 2006.

On January 15, 2008, Mr. Irgang filed his Amended Complaint in this case, seeking damages for violations of his civil rights as well as for state law claims.  On January 11, 2008, the Griffith Defendants served interrogatories on Mr. Irgang, who served answers on June 12, 2008.[1]

---

[1]  The following are the relevant June 12, 2008 answers to the Interrogatories:

Interrogatory No. 4: State with specificity each fact that supports your claim that the Town of Griffith, Karl Grimmer, Sergeant N. Rentas, and/or the Griffith Police Department acted intentionally, as alleged in the complaint.

Answer: Officer Rentas acted with knowledge, or should have had knowledge by training, and the City should have provided the proper training, that a misdemeanor arrest must be witnessed by the arresting officer. Officer Rentas did not witness[] the alleged occurrence and arrested me anyways.  Discovery continues.

Interrogatory No. 5: Identify, in accordance with the definitions, each witness who has knowledge concerning the incident described in the complaint or any of the allegations contained in the complaint or who will be called as a witness at trial.

Answer: Refer to the Rule 26 Disclosures, Rentas, and another officer on duty with Rentas, and Andrea Hoch.

Interrogatory No. 6: State the subject matter of each person identified in interrogatory No. 5.

Answer: Rentas, Hoch and the corporal who accompanied Rentas have direct knowledge of the incident.  Andrea Hoch made the allegation of indecent exposure.  Officer Rentas and the other accompanying officer did not witness the alleged exposure.

Interrogatory No. 7: Identify each fact that supports your claim that probable cause did not exist, as alleged in your complaint.

Answer: Because the alleged offense was a state crime defined by state statute, i.e., misdemeanor arrest requirements for police, probable cause did not exist by definition of the state law.

Interrogatory No. 8: Identify, in accordance with the definitions, each factual and legal basis

In his response brief, Mr. Irgang provides a detailed history of the 18 complaints he had made to the Griffith Police Department from February 6, 2005, through January 12, 2006, some of which were related to Ms. Kalbrunner-Hoch and her boyfriend, Christopher Morrison. Only the February 6, 2005 complaint of loud mopeds was responded to by Sergeant Rentas, and that complaint did not involve Ms. Kalbrunner-Hoch. Mr. Irgang disputes the events of his encounter with Ms. Kalbrunner-Hoch that resulted in his arrest for indecent exposure. In his deposition, Mr. Irgang testified that he turned around and saw Ms. Kalbrunner-Hoch stooped down looking in his window, laughing at him, and he denied that he had exposed his genitals to Ms. Kalbrunner-Hoch.

## ANALYSIS

Through the two motions for summary judgment, Defendants Town of Griffith, Karl Grimmer, Sergeant Rentas, and the Griffith Police Department seek summary judgment in their favor on the claims against them in Mr. Irgang's Amended Complaint. Mr. Irgang responded to the initial Motion for Summary Judgment but did not file a response to the Second Motion for Summary Judgment. The Court considers each motion in turn.

---

that supports your claim that you are entitled to recover compensatory damages, punitive damages, attorneys' fees, and/or costs.

Answer: Officer Rentas intentionally arrested Mr. Irgang in violation of state law. His intention can be proved as reckless disregard for the truth because as a trained law enforcement officer, he should have been aware of state statutory arrest provisions. Compensatory damages for violations of constitutional rights are allowed under federal standards and are informed by common law. *See Carey v. Piphus*, 435 U.S. 247, 257-259 (1978). Punitive damages may be available if the conduct exhibits, as claimed here, "reckless or callous indifference to federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages may be appropriate where the victim cannot prove compensable damage. *Carlson v. Green*, 446 U.S. 14, 22, n.9 (1980). Costs and attorney fees are available to prevailing parties under 42 U.S.C.A. § 1988(b). Attorney's fees apply also to violation of statutory rights, as in this case, in a § 1983 action. *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980).

Def. Br., Exh. 5.

## A. First Motion for Summary Judgment

In this first Motion for Summary Judgment, the four Griffith Defendants seek summary judgment on Mr. Irgang's federal and state claims, arguing that the § 1983 claim cannot be predicated solely on the basis that Mr. Irgang's arrest was made in contravention of Indiana Code § 35-33-1-1, that Sergeant Rentas is entitled to qualified immunity, and that no cause of action exists under Indiana law. The Court addresses each in turn.

*1. 42 U.S.C. § 1983–Fourth Amendment*

In the Amended Complaint, Mr. Irgang alleges that his arrest by Sergeant Rentas without probable cause and without statutory authority to do so violated his Fourth Amendment rights under the United States Constitution. In the Motion for Summary Judgment, the Griffith Defendants contend that Mr. Irgang's § 1983 claims cannot be predicated on a violation of Indiana Code § 35-33-1-1 by Sergeant Rentas for the warrantless arrest of Mr. Irgang for a misdemeanor that was not committed in the officers' presence. They also briefly argue that Sergeant Rentas and Officer Bailey were justified in concluding that there was probable cause to arrest Mr. Irgang. In response, Mr. Irgang concedes that the state statutory violation alone does not form a basis for his civil rights claim but maintains that there is a genuine issue of material fact as to whether Sergeant Rentas had probable cause to arrest him.

a. Warrantless misdemeanor arrest–"In the presence" rule

First, the parties are correct that a warrantless arrest for a misdemeanor not committed in the presence of the arresting officer, which violates Indiana Code § 35-33-1-1, does not provide a basis for a § 1983 claim brought under the Fourth Amendment. The Indiana statute provides that "[a] law enforcement officer may arrest a person when the officer has . . . probable cause to believe the

person is committing or attempting to commit a misdemeanor in the officer's presence . . . ."  Ind. Code § 35-33-1-1(a)(4).  However, the Seventh Circuit has held that there is no *per se* violation of the Fourth Amendment solely because a misdemeanor was not committed in the presence of the arresting officer.  *See Woods v. City of Chi.*, 234 F.3d 979, 991-95 (7th Cir. 2000) (citing *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997); *United States v. Smith*, 73 F.3d 1414, 1416 (6th Cir. 1996); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1189 (5th Cir. 1991); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); *Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir. 1974); *Scott v. District of Columbia*, 101 F.3d 748, 754 (D.C. Cir. 1996)).[2]  Rather, the proper inquiry is whether probable cause existed for the arrest. *See id.* at 992 (citing *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975)).  The Court in *Woods* reasoned that the Supreme Court's holding in *Whren v. United States* that a seizure based upon probable cause is reasonable under the Fourth Amendment regardless of the severity of the offense involved contradicts an "assertion that certain warrantless non-felony arrests violate the Fourth Amendment even if they are based on probable cause" and "undermines any claim that the reasonableness of a seizure under the Fourth Amendment depends entirely upon whether the offense is classified as a felony or as a misdemeanor."  *Id.* at 994 (citing *Whren v. United States*, 517 U.S. 806, 917-18 (1996)).  Therefore, the fact that Sergeant Rentas and Officer Bailey arrested Mr. Irgang for a misdemeanor that did not occur in their presence does not, by itself, violate the Fourth Amendment and thus cannot be the constitutional violation on which this § 1983 claim is predicated.  To survive

---

[2]Although the Seventh Circuit in *Woods* was reviewing the common law rule that a misdemeanor must have been witnessed by the arresting officer in order to make a warrantless arrest, the fact that Indiana has codified the "in the presence" rule does not change this Court's application of *Woods* to the facts of this case.  In holding that a violation of the "in the presence" rule does not by itself violate the Fourth Amendment, the Seventh Circuit relied on cases from other circuits addressing both statutory and common law "in the presence" rules.  *See Woods v. City of Chi.*, 234 F.3d 979, 991-95 (7th Cir. 2000).

summary judgment, Mr. Irgang must raise a genuine issue regarding whether Sergeant Rentas and Officer Bailey had probable cause to arrest him.[3]

b. Probable cause

Although the Seventh Circuit has held that the Fourth Amendment does not require a warrant for a misdemeanor arrest, the arrest must nevertheless be reasonable, which requires a showing of probable cause. *See Woods*, 234 F.3d at 995 (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)); *Morfin v. City of East Chi.*, 349 F.3d 989, 997 (7th Cir. 2003) (holding that a plaintiff must establish that the arrest was without probable cause to prevail on a Fourth Amendment false arrest claim).[4] The Seventh Circuit has held that "[p]robable cause exists if the totality of the facts and

_____

[3] The Griffith Defendants contend that this argument has been waived because the sole basis on which Mr. Irgang challenged probable cause in his interrogatory responses during discovery was a belief that a warrantless arrest for a misdemeanor that did not occur in the presence of the officer *ipso facto* lacked probable cause. Mr. Irgang never supplemented his interrogatory responses. As a result, they argue that he should not be permitted to raise a factual challenge to probable cause for the first time in response to summary judgment two weeks after the close of discovery.

A review of Mr. Irgang's interrogatory answers reveals that he did indeed limit his challenge of probable cause to the officers' violation of the "in the presence" rule. Contention interrogatories, such as the ones served on Mr. Irgang by the Griffith Defendants, are authorized by Federal Rule of Civil Procedure 33(a)(2), and can assist a party by requiring another "party to commit to a position and to give support for that position." *BASF Catalysts LLC v. Aristo, Inc.*, No. 2:07-CV-222, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009) (citing *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)). However, while crying foul, the Griffith Defendants do not complain that they were caught off guard or surprised by this defense to summary judgment. Nor do they even hint that they have been unduly prejudiced much less identify any discovery that they were precluded from obtaining as a result of Mr. Irgang's incomplete interrogatory answers. In fact, the Griffith Defendants specifically argue in their opening brief, albeit cursorily, that Sergeant Rentas and Officer Bailey "were more than justified in concluding that probable cause existed to arrest Michael Irgang," offering specific facts of the investigation to support the officers' conclusion. Def. Br., p. 6. In addition, the Griffith Defendants provide a thorough and persuasive analysis of probable cause in their reply brief and, thus, have not suffered prejudice. Under these circumstances, the Court declines to preclude Mr. Irgang from challenging the factual basis for probable cause in his response to summary judgment.

[4] The Seventh Circuit in *Woods* cited a two-part test for reasonableness: "First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense." *See Woods*, 234 F.3d at 995-96 (quoting *Ricci v. Arlington Heights, Ill.*, 116 F.3d 288, 290 (7th Cir. 1997) (quoting *U.S. v. Trigg*, 878 F.2d 1037 (7th Cir. 1989)). The Court notes that both *Ricci* and *Woods* dealt with arrests that took place in Illinois, and Illinois law allows a peace offer to arrest a person where the officer "has reasonable grounds to believe that the person is committing or has committed an offense," 725 ILCS 5/107-2. In contrast, Indiana law provides that "[a] law enforcement officer may arrest a person when the officer has . . . probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence . . . ." Ind. Code § 35-33-1-1(a)(4). However, as neither *Ricci* nor *Woods* dealt with a pretextual arrest and given the Seventh Circuit's reliance in *Woods* on cases from other circuits that dealt with codified "in the presence" rules, the Court declines to apply the two-part test in the instant case.

circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004) (quoting *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002)); *see also Shipman v. Hamilton*, 520 F.3d 775, 778 (7th Cir. 2008). This is an objective test. *See Whren*, 517 U.S. at 812-13; *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). In assessing the totality of the circumstances, the Court considers "the facts as they would have reasonably appeared to the arresting officer 'seeing what he saw, hearing what he heard' at the time of the incident." *Driebel*, 298 F.3d at 643 (quoting *Richardson v. Bonds*, 860 F.2d 1427, 1431 (7th Cir. 1998)); *see also Kelley*, 149 F.3d at 646. A jury must decide probable cause "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (explaining that, "[i]f the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists"). The Seventh Circuit has "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Driebel*, 298 F.3d at 643 (quoting *Woods*, 234 F.3d at 996); *see also Tangwell v. Stuckey*, 135 F.3d 510, 520 (7th Cir. 1998).

In this case, the undisputed facts relating to Mr. Irgang's arrest that were known to Sergeant Rentas and Officer Bailey from the time they arrived at the apartment complex are as follows. Mr. Irgang's apartment was a sunken apartment and his computer was next to his window, both of which Sergeant Rentas observed upon approaching the apartment building. On the night in question, his window and blinds were open. Mr. Irgang could see Ms. Karlbrunner-Hoch from his window and she could see him. Sergeant Rentas and Officer Bailey spoke to Andrea Karlbrunner-Hoch, who

made allegations against Mr. Irgang that, as she reached the front steps to the apartment building, Mr. Irgang pulled back his blinds; pulled down his underwear to just above his knees, exposing his genitals; grabbed his genitals with his left hand; and stated through the open window, "suck my dick bitch," while pointing to his genitals with his right index finger. Ms Kalbrunner-Hoch stated that Mr. Irgang wore no other clothing at the time of this incident. When the officers knocked on Mr. Irgang's door, he told them that he had to put on his pants. The officers spoke with Mr. Irgang in the hallway outside his apartment where Mr. Irgang told them his version of the events and the history between Ms. Kalbrunner-Hoch and himself.

In his deposition, Mr. Irgang admitted that he was in his apartment, at his computer, at approximately 10:00 p.m.; that there is a window next to his computer; that his blinds were open at least six inches; that his window was open; that when the police knocked, he told them he had to put his pants on; that he went into the hall and discussed the matter with the officers from the Town of Griffith; and that he was arrested in the hallway. Sergeant Rentas stated in his deposition that when they arrived at Mr. Irgang's apartment, he observed that Mr. Irgang had a "submerged or partially submerged apartment," that he could see Mr. Irgang's living room when they approached the front door to the apartment building, and that he had observed a computer by the window. Thus, the only facts that Mr. Irgang challenges are those related to the alleged indecent exposure; he does not challenge the facts of the arrest or the observations and actions of the officers.

The incident report reflects that the officers assessed the credibility of Ms. Kalbrunner-Hoch and of Mr. Irgang, finding Ms. Kalbrunner-Hoch more credible. Specifically, the report stated that "Ms. Kalbrunner-Hoch appeared upset and embarrassed by this incident. She was reluctant to repeat what the suspect had said. I believe her to be truthful and credible as she spoke of facts within her

own personal knowledge." Pl. Resp., Exh. S. Regarding Mr. Irgang, the officers reported that, although he "steadfastly denied exposing himself to the vicitm[, h]e did say . . . that he was in his own apartment and questioned how he could possibly be guilty of indecent exposure. Mr. Irgang seemed nervous from the first moment he spoke with officers." *Id.* In response to summary judgment, Mr. Irgang does not challenge that the officers assessed witness credibility.

In his response brief, Mr. Irgang contends that probable cause to arrest did not exist or should at least be decided by a jury because Sergeant Rentas' credibility assessment was unreasonable, essentially arguing that Sergeant Rentas should have believed Mr. Irgang rather than Ms. Kalbrunner-Hoch. In support, Mr. Irgang cites his own deposition testimony for his version of the events leading up to Ms. Kalbrunner-Hoch's call to the police. Mr. Irgang testified that he was at home sitting at his desk, working on his computer, when, at approximately 9:45 p.m., he heard laughing, at which point he turned around in his high-back computer chair to look out the crack in the blinds and he saw Ms. Kalbrunner-Hoch stooped down, laughing at him. He testified that, based on his history with her and her boyfriend, he felt the situation was not going to be good. He testified that he got up and shut the blinds so that Hoch could not see into his apartment and then went back to work on his computer.

However, the point of inquiry for probable cause is not the events that occurred prior to the officers' arrival but rather the totality of the circumstances presented to the officers that led to their decision to arrest Mr. Irgang. As noted above, Mr. Irgang does not contest any of the material facts surrounding the events that occurred once the police arrived. The sole additional information he offers is his denial to the officers of having exposed himself. The officers made a credibility determination based on the physical appearance of the premises, Mr. Irgang's nervous behavior, and

Ms. Karlbrunner-Hoch's demeanor. There is "[n]o constitutional obligation to conduct any further investigation before making an arrest if [the police officers] have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause." *Woods*, 234 F.3d at 997 (citing *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 440 (7th Cir. 1986)). As a general rule, "[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). Once a police officer establishes "cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." *Kelley*, 149 F.3d at 646.[5] The Seventh Circuit has "refused to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account." *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 2000).

Mr. Irgang has not offered any facts that would have led the officers to become suspicious such that they should have investigated further. However, he does argue that Sergeant Rentas should have been on notice of Mr. Irgang's tumultuous history with Ms. Kalbrunner-Hoch based on the numerous complaints he had made to the Griffith Police Department prior to January 12, 2006. Although Sergeant Rentas had taken a complaint from Mr. Irgang a year earlier on February 6, 2005, regarding loud mopeds unrelated to Ms. Kalbrunner-Hoch and although Sergeant Rentas testified that prior to January 12, 2006, he had been to the Mansards Apartments more than fifty times, Mr.

---

[5] Under Indiana law, a person commits a Class C misdemeanor when "(e) A person who, in a place other than a public place, with the intent to be seen by persons other than invitees and occupants of that place: . . . (3) fondles the person's genitals or the genitals of another person; . . . where the person can be seen by persons other than invitees and occupants of that place . . . ." Ind. Code § 35-45-4-0(e)(3).

Irgang has not offered any evidence that Sergeant Rentas was actually aware of any ongoing difficulties between Mr. Irgang and Ms. Kalbrunner-Hoch.

Chief Grimmer's testimony that officers in his department should be aware on a daily basis, as a matter of a verbally expressed procedure in the Griffith Police Department, of arrests and incident reports taken in the Town does not change this analysis. The test for probable cause is an objective one–whether it was reasonable for an officer in Sergeant Rentas' position, having seen what he had seen and heard what he had heard, to believe Ms. Kalbrunner-Hoch's version of the events. Although an officer with knowledge of the parties' past *may* have investigated further, it was reasonable for Sergeant Rentas not to investigate further based on the information he possessed and the totality of the circumstances presented to him at the time of the arrest. *See Woods*, 234 F.3d at 997 (citing *Spiegel*, 196 F.3d at 725 ("'[T]he inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation.'")); *Gerald M. v. Conneely*, 858 F.2d 378, 380-81 (7th Cir. 1988) (upholding district court's grant of summary judgment for the police officer in a § 1983 case, reasoning that the uncorroborated complaint of a ten-year-old child that his bicycle had been stolen by two other children was sufficient to provide the officer with probable cause to arrest the accused children, even though the arresting officer knew of a long-standing grudge between the victim's family and the family of the accused children).

Mr. Irgang also argues in response to summary judgment that Sergeant Rentas did not take the totality of the circumstances into account because he did not investigate to determine whether it was in fact possible to see someone from the waist down in the underground apartment. Again, the inquiry is not whether it would be reasonable to conduct further inquiry, but whether the officer had reasonable grounds on which to act. The incident report indicates that the officers observed Mr.

Irgang's livingroom window open, and, in his deposition testimony, Sergeant Rentas described Mr. Irgang's apartment as "submerged or partially submerged" and stated that he could see Mr. Irgang's living room and computer when they approached the front door to the apartment building. Based on this testimony, it was reasonable for Sergeant Rentas to believe Ms. Kalbrunner-Hoch's testimony without further investigation.

The Court finds that the record supports but one reasonable conclusion: Sergeant Rentas and Officer Bailey had probable cause to arrest Mr. Irgang based on the allegations of Ms. Kalbrunner-Hoch under the circumstances. The finding of probable cause operates as an absolute bar to Mr. Irgang's § 1983 claims based on the Fourth Amendment. *See Chelios*, 520 F.3d at 685-86 (affirming that the existence of probable cause "is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers"). Accordingly, the Court grants summary judgment in favor of Defendants on Mr. Irgang's § 1983 claims.

*2. Qualified Immunity*

The Griffith Defendants argue that, because the officers had probable cause to arrest Mr. Irgang, Sergeant Rentas is entitled to qualified immunity. A governmental actor performing a discretionary function enjoys qualified immunity and is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009) (citations omitted). Qualified immunity protects police officers "who act in ways they reasonably believe to be lawful." *See Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). A defendant is entitled to qualified immunity unless (1) a plaintiff establishes facts showing the violation of a constitutional right; and (2) that right was

clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, – U.S.

– , –, 129 S.Ct. 808, 815-16 (2009). Because the Court has found that as a matter of law the officers

had probable cause to believe that Mr. Irgang had committed a crime and thus Mr. Irgang cannot

establish facts showing that they violated his Fourth Amendment rights, Sergeant Rentas is protected

by qualified immunity as to Mr. Irgang's claims under § 1983.

*3. Indiana State Law Claims*

In his Amended Complaint, Mr. Irgang's "Preliminary Statement" alleges that his arrest and

subsequent detention were "unreasonable, without probable cause, and without statutory authority,

in violation of the fourth and fourteenth amendments to the U.S. Constitution as well as Indiana

law." Def. Br., Exh. 1, p. 1. Under the heading "Legal Claims," Mr. Irgang alleges that the

challenged actions of the Defendants violated federal laws as well as "the Indiana Constitution, Art.

I §§ 11 and 12, Indiana Code 35-33-1-1, and resulted in false imprisonment of the plaintiff, Michael

Irgang." *Id*. at p. 4. Mr. Irgang filed a timely Notice of Tort Claim on May 4, 2006, pursuant to

Indiana Code § 34-13-3 et seq.

In the Motion for Summary Judgment, the Griffith Defendants assert that no cause of action

exists under Indiana state law based on an illegal arrest and that Indiana does not recognize any

other cause of action. Mr. Irgang responds that he has a cause of action for false

arrest/imprisonment under Indiana law based on whether Sergeant Rentas had a reasonable belief

that probable cause existed. Under Indiana law, a false arrest requires an absence of probable cause.

*Row v. Holt*, 864 N.E.2d 1011 (citing *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App.

2003)). A police officer cannot be held liable for false arrest if "the officer believed in good faith

that the arrest was made with probable cause and that such belief was reasonable." *Garrett v. City*

*of Bloomington*, 478 N.E.2d 89, 93 (Ind. Ct. App. 1985) (citing *Brubaker v. King*, 505 F.2d 535, 536-37 (7th Cir. 1974)).  As the Court has determined that the officers had probable cause for the arrest, summary judgment is granted in favor of Defendants on Mr. Irgang's state law claim of false arrest.

Mr. Irgang has abandoned any other basis for liability under state law originally alleged in the Amended Complaint by virtue of his failure to raise them in response to the Motion for Summary Judgment.  As such, summary judgment on any remaining state law claims is granted in favor of the Griffith Defendants.

## B.  Second Motion for Summary Judgment

In contrast with the initial motion for summary judgment, the Second Motion for Summary Judgment is brought by Defendants Town of Griffith, Karl Grimmer, and the Griffith Police Department (the "Town Defendants") only.  In the motion, the Town Defendants seek summary judgment in their favor on the federal and state law claims on the basis that they were not personally involved in the wrongs alleged by Mr. Irgang, no policy or procedure condoned or turned a blind eye to the alleged constitutional violations, and punitive damages are not available against them. Because Mr. Irgang has not filed a response in opposition to the Second Motion for Summary Judgment, the motion is subject to summary ruling.  *See* N.D. Ind. L.R. 7.1(a) ("Failure to respond or reply within the time prescribed may subject the motion to summary ruling.").  For the following reasons, the Court finds that there are no genuine issues of material fact with regard to Mr. Irgang's Amended Complaint and that the Town Defendants are entitled to judgment as a matter of law.

*1. Respondeat Superior and Municipal Liability*

In his Amended Complaint, Mr. Irgang alleges that the Town Defendants are "responsible for the challenged actions of the defendant police officer who acted in accordance with City and/or Police Department policy in taking the actions challenged in this case." Def. 2d Mot., Exh. A., p. 2. Neither the Town nor the Police Department can be held liable for a § 1983 claim based on a theory of *respondeat superior* stemming from the actions of Sergeant Rentas but rather can only be held liable for constitutional violations caused by their own policy or custom. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694-95 (1978); *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007). The suit against Chief Karl Grimmer in his official capacity is nothing more than a suit against the municipality and, thus, is subject to the same standards under *Monell*. *See Grieveson v. Anderson*, 538 F.3d 763, 771-73 (7th Cir. 2008); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). However, as the Court has found that Sergeant Rentas and Officer Bailey had probable cause to arrest Mr. Irgang, there is no underlying constitutional violation on which to predicate municipal liability. *See Marion v. City of Corydon, Indiana*, 559 F.3d 700, 706 (7th Cir. 2009). Accordingly, summary judgment in favor of the Town of Griffith, the Griffith Police Department, and Chief Grimmer in his official capacity on Mr. Irgang's § 1983 claims is appropriate.

Likewise, the suit against Chief Grimmer in his individual capacity must fail because an individual can be held liable under § 1983 only for deprivations he personally caused, either by direct action or by approval of the conduct of others. *See Monell*, 436 U.S. at 694; *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (holding that an individual must have personally participated in the alleged constitutional violation to be held responsible for a violation of a federally

secured right under § 1983). Chief Grimmer cannot be personally liable for the actions of Sergeant Rentas under a theory of *respondeat superior*. *See Gentry v. Duckworth*, 64 F.3d 555, 561 (7th Cir. 1995). In this case, there is no evidence of record that Chief Grimmer was personally involved in the incidents alleged by Mr. Irgang to have violated his civil rights or that Sergeant Rentas acted at the direction of Chief Grimmer or with the knowledge and consent of Chief Grimmer. The Court grants summary judgment in favor of Chief Grimmer in his individual capacity on Mr. Irgang's § 1983 claims.

*3. Punitive Damages*

The Town Defendants seek summary judgment on Mr. Irgang's request for punitive damages in his Amended Complaint. Municipalities are immune from punitive damages in § 1983 cases. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Similarly, Indiana law provides that "governmental entities or an employee of a governmental entity acting within the scope of employment is not liable for punitive damages." Ind. Code § 34-13-3-4. However, the prayer for relief in Mr. Irgang's Amended Complaint seeks punitive damages only against the defendant police officers in their individual capacities. Def. 2d. Mot., Exh. A, p. 4. There is no allegation of punitive damages against any of the Town Defendants. Moreover, the Court grants summary judgment in favor of the Town Defendants on Mr. Irgang's substantive § 1983 claims. Nevertheless, to the extent that Mr. Irgang is seeking punitive damages against them, the Court grants summary judgment in favor of Defendants Town of Griffith, Griffith Police Department, and Karl Grimmer.

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** (1) Defendants, Town of Griffith's, Sgt. Rentas', Karl Grimmer's, and Griffith Police Department's Motion for Summary Judgment [DE 47],

and (2) Defendants, Town of Griffith's, Karl Grimmer's, and Griffith Police Department's Second Motion for Summary Judgment [DE 58]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants Town of Griffith, Karl Grimmer, Sergeant Rentas, and the Griffith Police Department and against Plaintiff Michael Irgang.

The Court **VACATES** all pretrial and trial settings.

SO ORDERED this 22nd day of June, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record